**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE:  QUALCOMM PATENT                           MDL Docket No. 2773
LICENSING ANTITRUST LITIGATION

**MEMORANDUM OF LAW OF QUALCOMM INCORPORATED IN RESPONSE
TO PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111

*Attorneys for Defendant*
*Qualcomm Incorporated*

Preliminary Statement

A number of cases have been filed in the Northern and Southern Districts of California as part of a coordinated attack on Qualcomm's business. The campaign is led by Apple, which filed a multifaceted, multibillion dollar commercial action in the Southern District of California ("Apple Action"), seeking to pay less than fair value for access to Qualcomm's industry-leading wireless technology. A host of other private suits have been brought, purportedly on behalf of several classes of consumers ("Consumer Actions"). The Federal Trade Commission, after a divided vote of the Commission, filed a complaint in the Northern District of California, relying heavily on Apple as a complainant and accusing Qualcomm of anticompetitive conduct ("FTC Action").

The putative class plaintiffs have asked the Panel to centralize all the private actions in either the Southern or Northern District of California. Qualcomm and Apple both seek to litigate in the Southern District. The FTC has not sought centralization in either district. Qualcomm respectfully recommends the Southern District of California as the appropriate and most efficient forum for centralization and coordination of the private actions, based on the following considerations:

- *Convenience of Parties and Witnesses.* The Southern District of California is where Qualcomm, the sole defendant, is headquartered. It is where the relevant conduct took place and where the vast majority of the relevant documents and witnesses will be found. Importantly, it is the only forum that can hear all the private actions through trial. The Southern District's docket is also significantly less congested than the Northern District's.

1

- *Apple Action.*  Apple filed its wide-ranging, 25-count complaint in the Southern District of California pursuant to a forum-selection clause in the key contract between Apple and Qualcomm.  The Apple Action must, by agreement of the parties, be tried in the Southern District of California.  Although the Apple Action raises one antitrust claim (Count 24) that shares some common issues of fact with the antitrust claims of the Consumer Actions, it also raises a plethora of non-common antitrust and other issues, including a breach of contract claim as well as 19 patent-related counts, that, for strong reasons of efficiency, should be handled by the same judge from pre-trial through trial.  For these reasons, Qualcomm and Apple agree that it is critical that the Apple Action remain in the one forum where it can properly be litigated through trial, the Southern District of California.  (*See* ECF No. 61, Apple Opp.)

- *Consumer Actions.*  Various Consumer Actions have been filed in both the Southern and the Northern Districts of California.  The plaintiffs in these actions have no strong connection to either district, and factions of them have sought centralization in both districts.  Qualcomm respectfully submits that, because many of the antitrust issues raised in the Consumer Actions also are raised in the Apple Action, the Consumer Actions can appropriately be coordinated with the Apple Action.  Because the sole defendant, Qualcomm, is headquartered in the Southern District of California, and for all the other convenience

and efficiency factors noted above, the Consumer Actions should be centralized in the Southern District of California.

- *FTC Action*.  Qualcomm understands that the Panel does not have authority to centralize the FTC Action.  *See* 28 U.S.C. § 1407(g).  The plaintiffs in *Bornstein v. Qualcomm Inc.* requested that the FTC Action be coordinated with the Consumer Actions.  Notably, the FTC *opposes* the *Bornstein* plaintiffs' motion, arguing that the FTC Action is exempt from MDL coordination pursuant to "a clear public policy choice in favor of allowing federal government antitrust law enforcement actions, such as the FTC Action, to proceed expeditiously *and independently of* related private actions".  (ECF No. 54, FTC Opp., at 4 (emphasis added).)  That independence undercuts any argument that the FTC Action is an anchor for centralization in the Northern District of California.  Moreover, if the Panel centralizes the Consumer Actions in the Southern District of California, Qualcomm intends to move to transfer the FTC Action to the Southern District of California pursuant to 28 U.S.C. § 1404.  *See* infra Part II.A.  The same factors that favor centralizing the Consumer Actions in the Southern District of California favor a convenience transfer of the FTC Action there as well.

In the alternative only, if the Panel centralizes the Consumer Actions in the Northern District of California, then Qualcomm respectfully requests that the Apple Action remain in the Southern District of California for the reasons stated herein.

3

Background

As of this filing, at least 24 lawsuits have been filed against Qualcomm that contain allegations that Qualcomm has engaged in anticompetitive conduct to acquire and maintain a monopoly in alleged markets for certain types of modem chips. These cases include:  (1) the Apple Action, filed on January 20, 2017 in the Southern District of California alleging, among other things, various claims relating to certain patents held by Qualcomm, breach of the Business Cooperation and Patent Agreement between Apple and Qualcomm, and violations of § 2 of the Sherman Act and California Unfair Competition Law; (2) the 22 Consumer Actions[1] brought on behalf of putative consumer (indirect purchaser) classes since January 18, 2017 in both the Northern and Southern Districts of California alleging violations of the Sherman Act and various state laws;[2] and (3) the FTC Action filed on January 17, 2017 in the Northern District of California seeking injunctive relief under § 13 of the FTC Act, 15 U.S.C. §§ 41-58.

---

[1] Of these 22 putative consumer class actions, six are identified in the Panel's Notice of Hearing Session, Feb. 14, 2017 (ECF No. 33).  The remaining 16 have been identified by parties to these proceedings in Notices of Related Action.  *See Carroll* Notice of Related Action, Feb. 3, 2017 (ECF No. 9); *Mackay* Notice of Related Actions, Feb. 6, 2017 (ECF No. 15); *Davis* Notice of Related Action, Feb. 9, 2017 (ECF No. 23); *Esteban* Notice of Related Action, Feb. 10, 2017 (ECF No. 25); *Herrera* Notice of Related Action, Feb. 14, 2017 (ECF No. 35); *Carney* Notice of Related Action, Feb. 15, 2017 (ECF No. 36); *Ervin* Notice of Related Actions, Feb. 16, 2017 (ECF No. 44); *Rotman* Notice of Related Action, Feb. 17, 2017 (ECF No. 57); *Kiefer* Notice of Related Action, Feb. 17, 2017 (ECF No. 63); Qualcomm Notice of Related Actions, Feb. 17, 2017 (ECF No. 66).

[2] A list of the Consumer Actions is attached hereto as Exhibit A.  Qualcomm has not been served in all the actions listed in Exhibit A, and in filing this Response, Qualcomm does not either appear or waive service in any of the underlying actions or any subsequently filed tag-along actions.  Further, Qualcomm does not waive any defenses to any action, including but not limited to lack of personal jurisdiction and/or failure to state a claim.

Fifteen of the Consumer Actions are pending in the Northern District of California and

seven of the Consumer Actions are pending in the Southern District of California.[3]

Defendant Qualcomm is headquartered in San Diego, California and the

vast majority of its employees and business activities in the United States are located in

San Diego.  Plaintiff Apple is headquartered in Cupertino, California and conducts

business throughout the United States and around the world.  Members of the putative

classes in the Consumer Actions are located throughout the United States.

Plaintiffs in eleven cases have sought centralization of the Consumer

Actions and the Apple Action in the Northern District of California:

- *Bornstein v. Qualcomm Inc.*, No. 17-cv-234 (N.D. Cal.);[4]

- *McMahon v. Qualcomm Inc.*, No. 17-cv-372 (N.D. Cal.);

- *Esteban v. Qualcomm Inc.*, No. 17-cv-622 (N.D. Cal.);

- *Boardsports School LLC v. Qualcomm Inc.*, No. 17-cv-398 (N.D. Cal.);

- *Ervin v. Qualcomm Inc.*, No. 17-cv-713 (N.D. Cal.);

- *Crutcher v. Qualcomm Inc.*, No. 17-cv-766 (N.D. Cal.);

- *Benad v. Qualcomm Inc.*, No. 17-cv-440 (N.D. Cal.);

- *Stromberg v. Qualcomm Inc.*, No. 17-cv-304 (N.D. Cal.);

- *Davis v. Qualcomm Inc.*, No. 17-cv-604 (N.D. Cal.);

---

[3] In addition, there are two purported securities fraud actions pending against
Qualcomm in the Southern District of California; however, no party has sought
centralization of those actions.

[4] The *Bornstein* plaintiffs moved to centralize the Consumer Actions and the Apple
Action in the Northern District of California (ECF No. 1, "Bornstein Mot.").

- *Key v. Qualcomm Inc.*, No. 17-cv-442 (N.D. Cal.); and

- *Kiefer v. Qualcomm Inc.*, No. 17-cv-785 (N.D. Cal.).

Plaintiffs in six cases have sought centralization of the Consumer Actions

and the Apple Action in the Southern District of California:

- *Mackay v. Qualcomm Inc.*, No. 17-cv-148 (S.D. Cal.);[5]

- *Carroll v. Qualcomm Inc.*, No. 17-cv-216 (S.D. Cal.);

- *Herrera v. Qualcomm Inc.*, No. 17-cv-273 (S.D. Cal.);

- *Schwartz v. Qualcomm Inc.*, No. 17-cv-166 (S.D. Cal.);

- *Rotman v. Qualcomm Inc.*, No. 17-cv-260 (S.D. Cal.); and

- *Miller v. Qualcomm Inc.*, No. 17-cv-147 (S.D. Cal.).

Qualcomm respectfully recommends the Southern District of California as

the appropriate and most efficient forum for the reasons detailed below.

<u>Argument</u>

I.      TRANSFER AND COORDINATION IS APPROPRIATE.

Under 28 U.S.C. § 1407(a), civil actions pending in different district

courts "may be transferred to any district for coordinated or consolidated pretrial

proceedings" when they involve "one or more common questions of fact" and where the

Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") determines that such

transfer "will be for the convenience of parties and witnesses and will promote the just

and efficient conduct of such actions".  28 U.S.C. § 1407(a).  Common questions of fact

exist where the actions share common events, defendants, witnesses, and/or "core factual

---

[5] The *Mackay* plaintiff was the first plaintiff to seek to centralize the Consumer Actions and the Apple Action in the Southern District of California (ECF No. 17, "Mackay Opp.").

allegations".  *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

> A.      Common Questions of Fact Exist.

Qualcomm denies all allegations that it engaged in unlawful conduct. However, Qualcomm agrees with both sets of moving plaintiffs that the Consumer Actions raise common questions of fact regarding the antitrust claims alleged by the putative class representatives, including, for example, whether plaintiffs have alleged relevant antitrust markets, whether Qualcomm has market power in the alleged markets for certain types of modem chips and for cellular standard essential patents, and whether Qualcomm's licensing practices have harmed competition among modem chip suppliers. Qualcomm also recognizes that the antitrust claims of the Consumer Actions raise questions of fact that overlap in many (but not all) aspects with the single antitrust claim that Apple included as one of the many counts in the Apple Action.  The Panel routinely centralizes actions such as these for pretrial purposes.  *See, e.g.*, *In re IBM Antitrust Litig.*, 342 F. Supp. 200 (J.P.M.L. 1972) (centralizing antitrust cases under 28 U.S.C. § 1407 where the cases all involved similar conduct and alleged the same markets); *In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (same).

> B.      Consolidation of the Consumer Actions and Coordination with the Apple Action in the Southern District of California Would Eliminate Duplication of Discovery, Reduce Litigation Costs and Avoid Conflicting Pretrial Rulings and Schedules.

The Panel generally centralizes and orders coordination of pretrial proceedings where it believes that there will likely be substantial overlap in document discovery and witness testimony due to the similarity of the allegations made in each.

*See In re Lipitor Antitrust Litig.*, 856 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) (centralizing actions with similar allegations in part because it would eliminate duplicative discovery); *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) (same); *In re Fretted Musical Instruments Antitrust Litig.*, 657 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009) (same).  That is the case here.  (*See, e.g.*, Bornstein Mot. at 4-6; Mackay Opp. at 2-4.)

If the private actions are not coordinated, Qualcomm—the sole defendant in all of the actions—will bear the significant burden caused by the lack of efficiency. Qualcomm will have to appear simultaneously in multiple jurisdictions, conduct similar discovery in multiple locations, and respond to multiple potentially inconsistent orders. Thus, while Qualcomm agrees with Apple that discovery should be coordinated across the private actions, it is important that this coordination be conducted pursuant to an order under section 1407 and not left to possible informal efforts at coordination.  Due to the number of related actions and the complexities of the issues involved, voluntary coordination—which Apple proposes—is not sufficient.

II.     THE SOUTHERN DISTRICT OF CALIFORNIA IS THE MOST EFFICIENT
        AND BEST SUITED FORUM.

When determining where to centralize cases for pretrial proceedings, the Panel looks to the "nexus" between the allegations and the proposed forum.  *See In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016). Relevant factors include the location of documents and witnesses, and the parties' places of business.  *See id.*  The accessibility of the proposed location and the docket conditions of the proposed district are also important considerations.  *See In re Trasylol Prods. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008).  In addition, the Panel has indicated

8

its preference for allowing pre-trial activity to proceed in the forum where ultimate trial

on the merits is also possible.  *See In re Gerber Probiotic Prods. Mktg. & Sales Practices*

*Litig*., 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) (denying centralization in favor of

motion to transfer under section 1404, which would allow trial to proceed in the forum to

which the cases were transferred).  Qualcomm submits that the Southern District of

California is the only forum that meets all the criteria listed above as to both the Apple

Action and the Consumer Actions, and is therefore the logical and most efficient choice.

> A.      The Southern District of California Is the Only District that Can Hear the
>         Apple Action and the Consumer Actions *Through Trial*.

The Southern District of California is the only forum able to hear the

Apple Action and the Consumer Actions *through trial*.  The Apple Action was filed in

the Southern District of California in compliance with the forum selection clause

contained in the Business Cooperation and Patent Agreement between Apple and

Qualcomm.  (*See* Apple Compl. ¶ 23.)  Therefore, should the Apple Action proceed to

trial, it will ultimately be tried in the Southern District of California, regardless of

whether it is centralized for pretrial proceedings.  *See, e.g.*, *In re Park W. Galleries, Inc.,*

*Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) ("[B]ecause

Section 1407 transfer is for pretrial purposes only, our denial of this motion to vacate in

no way precludes Royal Caribbean from seeking enforcement of the forum selection

clauses for purposes of trial.").

It is particularly important that the Apple Action proceed in the same court

from pre-trial proceedings through trial.  The Apple Action is in large part a breach of

contract and patent case between two corporations that have a multibillion dollar

commercial relationship with each other.  It involves a mesh of interrelated contracts, as

well as commercial relationships involving not only Qualcomm and Apple, but also the

Asian contract manufacturers that make Apple's iPhones and iPads.  The Apple Action

also involves declaratory judgment counts of non-infringement for nine patents; those

patent counts will require (i) complex pre-trial claim construction; (ii) pre-trial rulings on

various motions related to technical expert submissions; and (iii) an in-depth

understanding at trial as to how the technical aspects of the case have been shaped

through those pre-trial rulings.  Furthermore, Apple seeks a declaratory judgment of a

proper "FRAND" (fair, reasonable and non-discriminatory) royalty.  The determination

of that royalty will require a great deal of time and attention from the district judge

presiding over the case, who will need to consider and decide numerous factual and legal

issues relating to standards development organizations, licensing of standard essential

patents, the breadth and scope of Qualcomm's portfolio of thousands of patents,

Qualcomm's FRAND licensing commitment, and Apple's corresponding obligations as a

potential FRAND licensee, in order to reach a decision on these causes of action.  These

complexities militate in favor of having the same judge who is making pre-trial

determinations on these matters also ultimately conduct the trial.

Moreover, plaintiffs in all the Consumer Actions will require discovery

from Qualcomm, and likely also from Apple.  It will be administratively efficient and

appropriate to have a single court handle all these issues, and ultimately hold the trial of

the Apple Action.  This further supports the conclusion that the location of the Apple

Action should determine the location of centralization to permit discovery to be

efficiently coordinated between the Apple and Consumer Actions.

If the Panel centralizes the actions for pretrial proceedings in the Southern District of California, the Apple Action will be tried before the same judge in that district, and the Consumer Actions, including any tag-along actions, likely will be consolidated into a separate single action that will be coordinated with the Apple Action and will also proceed through trial in that district.  In addition, if the Panel centralizes the actions for pretrial proceedings in the Southern District of California, Qualcomm intends to move to transfer the FTC Action to the Southern District of California, pursuant to 28 U.S.C. § 1404, so that the FTC Action can proceed to trial in the same forum.  As a result, if Qualcomm is successful in transferring the FTC Action, all the actions could be heard through trial by a single judge, who would be familiar with all the matters, and who would be able to take further steps to reduce duplication of discovery and curtail the time, effort, and cost needed to litigate these matters through trial.  *See In re Capacitors Antitrust Litig. (No. II)*, MDL No. 2748, 2016 WL 7188803, at *2 (J.D.M.L. Dec. 7, 2016) (noting defendants' stated intention to move to transfer under § 1404 in ruling on § 1407 motion).

That cannot happen in the Northern District.  If the Panel were to centralize the Apple Action and the Consumer Actions for pretrial proceedings in the Northern District of California, at least two trials would occur before at least two different judges in separate districts.  The trial judge for the Apple Action in the Southern District of California will thereby be denied the benefit of information relating to complex patent-related and contractual issues raised in Apple's complaint.  In addition, splitting the trials across two districts will pose a risk of inconsistent judgments on the common issues.

11

B.   Location of the Parties, Conduct at Issue and Documentary Evidence and Witnesses.

Where, as here, plaintiffs are geographically dispersed and the actions share a common defendant, the location of the common defendant will be particularly important in determining where to centralize pretrial proceedings. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, MDL No. 2705, 2016 WL 3190426, at *3 (J.P.M.L. June 2, 2016) (the location of defendants' headquarters weighs more heavily where plaintiffs are geographically dispersed). The Consumer Actions involve named plaintiffs from at least 28 states, each purporting to represent statewide and nationwide classes of resident purchasers of broad categories of cellular devices, and Apple, a large multinational corporation located in California. On the other hand, the sole defendant in all the actions is Qualcomm, which is headquartered in the Southern District of California. Thus, the location of the parties weighs heavily in favor of centralization in the Southern District of California.

Moreover, the vast majority, if not all, of Qualcomm's witnesses and documents are located in San Diego.[6]  *See, e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (centralizing actions in the district where defendant's principal place of business and many relevant documents and witnesses were located); *In re Kaplan Higher Educ. Corp.*, 626 F. Supp. 2d 1323, 1324

---

[6] Plaintiff Esteban noted in his brief in support of centralizing in the Northern District (ECF No. 43) that Qualcomm filed 28 U.S.C. § 1782 discovery requests against Apple, Samsung, and Intel in the Northern District of California. But this has no bearing on the present action. Those actions were for targeted discovery from parties either headquartered or with major offices in the Northern District of California. Here, the overwhelming majority of discovery will likely come from Qualcomm, which is headquartered in the Southern District of California.

(J.P.M.L. 2009) (same); *In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices Litig.*, 178 F. Supp. 3d 1377, 1379 (J.P.M.L. 2016) (same).  The Consumer Actions and Apple's antitrust claim center on Qualcomm's licensing and sales practices, and its interactions with modem chip suppliers and cellular device makers.  Most of Qualcomm's purported conduct described in the complaints is alleged to have occurred at its headquarters in the Southern District of California.  Qualcomm's licensing division is located in San Diego, and licensing negotiations are directed from its San Diego headquarters.  Similarly, Qualcomm's chip division is headquartered in San Diego, and policies and practices relating to the chip business are directed from Qualcomm's San Diego headquarters.[7]  Even Apple concedes that the relevant interactions relating to its claims occurred in the Southern District of California.  (*See, e.g.*, Apple Compl. ¶ 19.)  Thus, the location of the conduct at issue weighs heavily in favor of centralization in the Southern District.

       C.      <u>Convenience to the Parties</u>.

          For the reasons discussed above, the Southern District of California is the most convenient forum for the parties:  the actions involve geographically dispersed plaintiffs suing a single defendant located in the Southern District of California, and

---

[7] The Bornstein plaintiffs argue that Qualcomm has offices in the Northern District of California.  (Bornstein Mot. at 8-9.)  However, the witnesses and documents relevant to Qualcomm's interactions with its global customer base and competitors will be located at Qualcomm's headquarters in the Southern District of California.  *Cf. In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369-70 (J.P.M.L. 2010) (transferring proceedings to the district where defendants were headquartered, despite plaintiff's argument that discovery would be located in defendants' regional offices).

evidence and witnesses are likely to be concentrated in that district.  Moreover, as

detailed in the Mackay Response, the Southern District is a convenient urban location

that can be easily accessed by all parties and counsel.  (Mackay Opp. at 10.)

        D.       Docket Load.

        The relative capacity of the docket of a potential transferee district to

preside over pretrial proceedings is an important factor in the Panel's decision.  *See In re*

*Trasylol Prods. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008); *In re:*

*NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008); *In re Tyco*

*Int'l, Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000).  As of

January 17, 2017, there were 19 multidistrict litigations pending in the Northern District

of California, of which 6 were antitrust litigations, while there were only 5 multidistrict

litigations pending in the Southern District of California, of which only 1 was an antitrust

litigation.  Three of the multidistrict litigations pending in the Northern District are

pending in the San Jose Division, which is where the FTC Action and the Northern

District Consumer Actions are pending.  And of those three, two are before Judge Lucy

H. Koh, the judge assigned to the FTC Action and the majority of the Northern District

Consumer Actions, and one is before Judge Edward J. Davila.  At the same time, the

number of active judges in the Northern and Southern Districts of California are

comparable—14 in the Northern District and 12 in the Southern District[8]—so the docket

in the Southern District is considerably less crowded.  The same is true as to overall

docket congestion.  In the 12 months ending on September 30, 2016, when the

---

[8] A thirteenth district judgeship is currently vacant.

most recent published federal court statistics were made available,[9] on average, each

Northern District judge had 572 pending cases—the third highest in the Ninth Circuit—

and had terminated 487 cases in the previous 12 months, while each Southern District

judge had only 404 cases pending and had terminated 643 cases in the prior 12 months.

Even more compelling is that the average number of newly filed *civil* actions per judge in

the Southern District of California is *half* that of the Northern District (273 vs. 522).[10]

That the Southern District of California's docket is less crowded than the Northern

District of California's docket weighs in favor of centralization in the Southern District of

California.

III.    IN THE ALTERNATIVE, EVEN IF THE OTHER ACTIONS ARE
        CENTRALIZED ELSEWHERE, THE APPLE ACTION SHOULD PROCEED
        IN THE SOUTHERN DISTRICT OF CALIFORNIA.

        For the reasons stated above, it is logical and efficient to centralize the

Consumer Actions for coordination with the Apple Action in the Southern District of

California.  However, should the Panel determine that the Consumer Actions ought to be

centralized elsewhere, Qualcomm respectfully requests that the Apple Action remain in

the Southern District of California.

        As discussed above, the Apple Action must be tried in the Southern

District of California pursuant to the forum selection clause contained in the Business

---

[9] *See United States District Courts – National Judicial Caseload Profile*, United
States Courts, http://www.uscourts.gov/file/21411.

[10] The Southern District of California has a much larger criminal felony caseload—
258 newly filed criminal cases per Southern District judge vs. 37 newly filed criminal
cases per Northern District judge.  However, these largely border-related criminal cases
typically take far less time to resolve; the median time from filing to disposition for a
criminal felony case in the Southern District is 5 months, versus 14.6 months in the
Northern District.  *Id.*

Cooperation and Patent Agreement between Apple and Qualcomm.  It also raises unique issues that counsel in favor of keeping the Apple Action in the Southern District of California.  In particular, the Apple Action involves a complex set of interrelated contracts and commercial relationships, a breach of contract claim, and 19 highly technical patent-related claims.  (*See* Apple Opp. at 5-6.)  As a result of all of these complexities, and as noted above, it is particularly important that the trial judge in the Apple Action be the same judge who oversees the pre-trial proceedings, which requires that the Apple Action stay in the Southern District of California.

It should also be noted that, although the Apple Action does include an antitrust claim—Count 24, the penultimate count of its complaint—the antitrust claim in the Apple Action is different from those found in the Consumer Actions and the FTC Action.  Apple does not rely on the various state-specific "*Illinois Brick* repealer" statutes as the Consumer Actions do; it also does not (and cannot) bring a claim under Section 5 of the FTC Act as the FTC has done.  Apple does not plead that a relevant market for standard essential patent rights exists, as the Consumer Actions do, and of course, Apple occupies a different stage in the supply chain from the individual handset purchaser plaintiffs in the Consumer Actions.  Thus, while coordination of the Apple Action and the Consumer Actions in the Southern District of California would be permissible and appropriate under Section 1407, the Apple Action can also reasonably proceed separately from the Consumer Actions.

Qualcomm and Apple agree that the unique issues in the Apple Action weigh against transferring it out of the Southern District of California for pretrial proceedings, only to have it sent back to the Southern District of California for trial.  (*See*

Apple Opp. at 12 ("it is most efficient to keep Apple's claims in the Southern District of California so a single judge can preside over those claims for both pretrial proceedings and trial"); *see also, e.g.*, *In re W. Elec. Semiconductor Patent Litig.*, 415 F. Supp. 378, 379-80 (J.P.M.L. 1976) (action with breach of contract claim and multiple patent infringement claims not consolidated with other actions alleging only a single patent infringement claim).  Accordingly, should the Panel choose to centralize the Consumer Actions somewhere other than the Southern District of California, Qualcomm respectfully requests that the Apple Action not be centralized and remain in the Southern District of California.

Conclusion

For the foregoing reasons, Qualcomm respectfully requests that the Consumer Actions be centralized for coordination with the Apple Action in the Southern District of California for pretrial proceedings.

Dated:  February 17, 2017

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,


            /s/ Evan R. Chesler

Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         Tel: (212) 474-1000
            Fax: (212) 474-3700
               echesler@cravath.com

Robert A. Van Nest
KEKER & VAN NEST LLP
   633 Battery Street
      San Francisco, CA 94111-1809

Tel: (415) 391-5400
Fax: (415) 397-7188
rvannest@kvn.com

*Attorneys for Qualcomm Incorporated*